**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Eugene Ray CLEGG,
Defendant–Appellee.**

No. 86–3227.

United States Court of Appeals,
Ninth Circuit.

Argued July 29, 1987.

Submitted Aug. 5, 1987.

Decided May 18, 1988.

Jerald E. Olson, Asst. U.S. Atty., Criminal Div., Seattle, Wash., for plaintiff-appellant.

Thomas W. Hillier, II, Federal Public Defender, Seattle, Wash., for defendant-appellee.

Before SKOPIL, NELSON and KOZINSKI,* Circuit Judges.

PER CURIAM:

Eugene Ray Clegg is charged with exporting firearms in violation of 18 U.S.C. § 922(a)(1) (1982) and 22 U.S.C. § 2778(b)(2), (c) (1982). During pretrial proceedings, Clegg requested the government to produce documents that allegedly contained information of his activities. The government opposed the motion, asserting that the information sought was not material to any valid defense and that such documents would likely be subject to the Classified Information Procedures Act (CIPA), 18 U.S.C.App. III, §§ 1–16 (1982). The government submitted classified and unclassified documents to the district court for in camera inspection to establish that the documents were not material to a defense. The district court ruled the classified documents were material and discoverable and that proposed alternative materials were deficient and unacceptable. We affirmed the district court's ruling. *United States v. Clegg*, 740 F.2d 16, 18 (9th Cir.1984).

On remand, Clegg gave notice pursuant to section 5 of CIPA of his intention to disclose at trial certain classified information. The government sought a pretrial determination of the "use, relevancy, or admissibility" of the proffered evidence. 18 U.S.C.App. III, § 6(a). After an in camera hearing, the district court ruled that all unclassified and classified information relevant to defendant's defense was admissible at trial. The government now appeals that ruling.

### Facts

Prior to his arrest in September 1982, Clegg taught at an American school in Islamabad, Pakistan. According to Clegg, United States officials, affiliated with various agencies of our government, solicited, encouraged and assisted his efforts to supply weapons to Afghan rebels resisting Soviet occupation of their country. Believing that this solicitation, encouragement, and assistance constituted official permission to transport arms, Clegg smuggled arms through Pakistan to the Afghan rebels. He was arrested in Pakistan, where he was imprisoned. Upon his release, United States marshals escorted him back to this country. He returned home facing charges of exporting firearms in violation of federal law. In defending against these charges, Clegg seeks to prove that he acted in reasonable good-faith reliance on statements of United States officials that led him to believe he was lawfully transporting guns.

The acts on which Clegg claims to have relied include the following alleged events, occurrence of which Clegg proposes to prove at trial: (1) that Lieutenant Colonel Durham of the United States Army, second

* Judge Kozinski was drawn to replace Judge Kennedy.

in command in Pakistan, informed Clegg that the United States supplied arms to Afghan rebels, and that the United States wanted Clegg to smuggle arms to the rebels; (2) that Durham offered to put Clegg in contact with the rebels, that he later became aware of Clegg's smuggling, that he helped Clegg to plan a large secret arms shipment which never took place, and that he supplied Clegg with arms for resale to Afghan rebels on one occasion; (3) that Colonel Maugher of the United States Army, who was director of military intelligence for the United States in Pakistan, knew of Clegg's activities, and that Maugher once sold ammunition to Clegg with the understanding that it was destined for resale to the rebels; and (4) that several other individual government officials, whose positions led Clegg to believe that they had power to authorize arms shipments to the rebels, knew of Clegg's shipments and on at least one occasion assisted Clegg in shipping arms.

■ The district court decided that certain classified information was relevant and admissible to Clegg's proposed defense based on good-faith reasonable reliance on the apparent authority of government officials. The government appeals this decision under section 7 of CIPA, which permits interlocutory appeals from decisions that allow disclosure of classified information.

## Discussion

A. This case is controlled by our recent decision in *United States v. Tallmadge*, 829 F.2d 767 (9th Cir.1987). In *Tallmadge*, we reviewed a conviction for violation of 18 U.S.C. § 922(h)(1) (1982), which prohibits convicted felons from receiving firearms. Tallmadge defended on the ground that his state felony conviction had been reduced to a misdemeanor. While that fact alone did not bring him outside the sweep of section 922, we exonerated Tallmadge because he had disclosed these facts to a licensed firearm dealer and the dealer had sold him the weapon anyway. *Id.* at 774. In reaching this conclusion, we reasoned as follows:

In the matter before us, the uncontradicted evidence established that Tallmadge received and possessed firearms in reliance upon the representation of a federally licensed gun dealer that a person convicted of a felony in a state court could purchase firearms if the offense had subsequently been reduced to a misdemeanor. We have no doubt that under the doctrine of entrapment by estoppel a person could not be prosecuted under 18 U.S.C. §§ 922(h)(1) and 1202(a)(1) if an ATF official had represented that a person convicted of a felony can purchase firearms after the charge has been reduced to a misdemeanor. Here, the misleading statement regarding the lawfulness of Tallmadge's proposed conduct was made by a licensee of the federal government. We noted in [*United States v.*] *Pruner* [606 F.2d 871 (9th Cir.1979)] that Congress has placed a duty on firearms dealers to question their customers regarding a possible criminal record. 606 F.2d at 874. A licensed dealer may not sell a firearm to any person if he knows or has reasonable cause to believe that such person "is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year...." 18 U.S.C. § 922(d)(1) (1982).

The Department of the Treasury requires a licensed firearms dealer and a prospective buyer to fill out a form entitled Firearms Transaction Record to permit the licensee to determine if he may lawfully sell a firearm to such person. The form also requires the firearms dealer "to alert the transferee [buyer] of certain restrictions on the receipt and possession of arms." The form further provides that "[t]he transferor [seller] of the firearm is responsible for determining the lawfulness of the transaction...." To fulfill this duty the form provides that the firearms dealer "should be familiar with the Gun Control Act of 1968 (18 U.S.C. Chapter 44) and Title VII, Unlawful Possession or Receipt of Firearms, (82 Stat. 197), and 27 CFR Part 178 (Commerce in Firearms and Ammunition)."

Thus, Congress has not only granted certain persons the exclusive right to engage in the business of selling firearms, it has also given them the affirmative duty of inquiring of a prospective buyer whether he has a criminal record that would make it unlawful for him to purchase a firearm. 18 U.S.C. § 922(d)(1). In addition, the Treasury Department requires licensees to inform buyers concerning the restrictions imposed by Congress on the purchase of firearms. Clearly, the United States Government has made licensed firearms dealers federal agents in connection with the gathering and dispensing of information on the purchase of firearms. Under these circumstances, we believe that a buyer has the right to rely on the representations of a licensed firearms dealer, who has been made aware of all the relevant historical facts, that a person may receive and possess a weapon if his felony conviction has been reduced to a misdemeanor.

*Id.*

■ We view this as an a fortiori case. Tallmadge was dealing with a licensed firearm dealer, a private party. Clegg alleges that he dealt not merely with government officials, but with officials of the highest rank. Moreover, Clegg, unlike Tallmadge, was operating far from the territory of the United States, in a place not obviously covered by American law. If Tallmadge was entitled to rely upon the representations of the gun dealer as a complete defense, we can hardly deny the same defense to Clegg. Whatever our disagreements may be with the court's ruling in *Tallmadge, see, e.g., id.* at 775–82 (Kozinski, J., dissenting), it is the law of the circuit and we are bound to follow it.

■ B. The district court denied the government's motion under section 6(c) of CIPA to substitute non-classified information for the classified information Clegg proposed to introduce at trial. The district court found that the proposed substitution would decrease the reasonableness of Clegg's belief that the government approved his activities. Having reviewed this information, we conclude that the district court did not abuse its discretion in denying the motion for substitution.

### Conclusion

The judgment of the district court is AFFIRMED.

SKOPIL, Circuit Judge, dissenting.

I dissent from the majority's holding that Clegg is entitled to assert a mistake of law defense to the charges of exporting firearms without a license. Generally, ignorance of the law or a mistake as to the law's requirements cannot be a defense in a criminal prosecution. *See United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 563, 91 S.Ct. 1697, 1700, 29 L.Ed.2d 178 (1971). An exception has been created to provide for the legitimate reliance on an official interpretation of law. *See, e.g., Cox v. Louisiana*, 379 U.S. 559, 571, 85 S.Ct. 476, 484, 13 L.Ed.2d 487 (1965) (due process prevents conviction of individual advised by police chief to protest across the street to avoid prosecution under statute prohibiting demonstrations "near" the courthouse); *Raley v. Ohio*, 360 U.S. 423, 425–26, 79 S.Ct. 1257, 1259–60, 3 L.Ed.2d 1344 (1959) (convictions violate due process where a state investigating commission assured witnesses they could invoke their privilege against self-incrimination but where court later denied them the privilege); *United States v. Albertini*, 830 F.2d 985, 989 (9th Cir.1987) (due process prohibits defendant's conviction for activities held to be lawful by court of appeals at least until the Supreme Court has granted certiorari). In each of these examples, it is clear that the actor actually relied on an official statement that certain conduct was not unlawful. Similarly, in *United States v. Tallmadge*, 829 F.2d 767, 774 (9th Cir. 1987), we held that a purchaser of a gun could reasonably rely on the representations of a licensed firearms dealer who declared that the sale was lawful. We concluded that the conviction of someone misled by the affirmative statements of a government agent that certain conduct

is lawful violates due process. *Id.* at 775.

Nothing in my search of the record in this case discloses the requisite reliance on an official interpretation of the law. Even assuming that Clegg dealt with officials possessing the requisite authority [1] to suspend the law, Clegg never alleges these officials authorized the unlawful conduct or told him that his activities were lawful. In fact, Clegg admits that he was involved in gun running actitivies before he ever became acquainted with these officials. As the majority notes in its summary of Clegg's allegations, various officials of the United States may have become aware of Clegg's activities. Moreover, several officials may have actually helped Clegg in his quest to supply arms to Afghan rebels. Liberally construed, the officials' conduct may amount to what the majority terms "solicitation, encouragement, and assistance" to Clegg. Nevertheless, in my opinion, there is still lacking any allegation of an official representation that Clegg's conduct was lawful. *Cf. United States v. Durrani*, 835 F.2d 410, 423 (2d Cir.1987) (denying mistake of law defense to defendant who never testified that he believed government involvement in a crime made the activity lawful). Hence, Clegg may well have had the aid of various United States officials. This does not make his conduct lawful. I would reverse the district court's ruling that Clegg is entitled to assert the defense.

---

**1.** The majority does not specifically address the issue of what authority the official must possess. In *United States v. Barker,* 546 F.2d 940, 946–49 (D.C.Cir.1976), Judge Wilkey approved the use of a mistake of law defense for someone who relied on the "apparent authority" of a government official. Other circuits have adopted a stricter standard by requiring that the government official have actual authority. *See United States v. Duggan,* 743 F.2d 59, 84 (2d Cir.1984).

In *Tallmadge,* we seemed to conclude that a licensed firearms dealer is an agent of the United States empowered by statute to interpret the law. *See Tallmadge,* 829 F.2d at 774. Here, the majority simply notes that Clegg dealt with "officials of the highest rank" but does not decide whether such officials are empowered either to provide Clegg with a license to export arms or to suspend the license requirement.