**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gregory S. BREBNER, Defendant–
Appellant.**

**No. 89–30100.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 1, 1990.

Decided Dec. 9, 1991.

Robert B. Henderson, Henderson & Nichols, Spokane, Wash., for defendant-appellant.

Kim Lindquist and Ronald D. Howen, Asst. U.S. Attys., Boise, Idaho, for plaintiff-appellee.

Before HUG, and D.W. NELSON, Circuit Judges, and WALKER,* District Judge.

HUG, Circuit Judge:

Gregory Brebner appeals his convictions for unlawful receipt and possession of firearms, in violation of 18 U.S.C.App.

* Hon. Vaughn R. Walker, United States District Judge for the Northern District of California, sitting by designation.

§ 1202(a)(1), and 18 U.S.C. § 922(h)(1) and 2, and for making false statements in the purchase of firearms, in violation of 18 U.S.C. § 922(a)(6). Brebner raises two issues on appeal.

First, Brebner contends the district court erred by excluding evidence in support of an entrapment by estoppel defense. Second, Brebner contends, for the first time on appeal, that Congress' amendment to the firearms statutes in 1986 precludes use of his predicate Washington state felony convictions as an element of his federal offenses because those state convictions have been expunged under state law. Concluding that Brebner has failed to present sufficient evidence to support an entrapment by estoppel defense, and that the applicable 1986 statutory amendment does not apply retroactively to offenses committed prior to its effective date, we affirm Brebner's convictions.

### I.

On May 12, 1988, Brebner was charged in a seven-count federal indictment alleging various federal firearms offenses. Counts I and II alleged the unlawful possession of firearm silencers, in violation of 26 U.S.C. §§ 5861(d), and (i). Count III alleged that Brebner unlawfully possessed various firearms after previously having been convicted of felony crimes under federal and Washington law, and aiding and abetting, in violation of 18 U.S.C.App. § 1202(a)(1), and 18 U.S.C. § 2. Counts V and VII alleged the unlawful receipt of firearms after having previously been convicted of felony crimes under Washington law (delivery of a controlled substance) which carry a punishment in excess of one year of imprisonment, in violation of 18 U.S.C. § 922(h)(1). Finally, Counts IV and VI all eged that Brebner unlawfully made false statements in his acquisition of firearms, in violation of 18 U.S.C. § 922(a)(6).

On the second day of jury trial, the Government brought an oral motion *in li-*

*mine* to preclude Brebner from introducing the following three categories of evidence: (1) evidence regarding the Government's alleged violation of the Speedy Trial Act and the length of time expended in bringing Brebner to trial; (2) evidence that Brebner's prior Washington state court convictions in 1976 and 1977 had been expunged and could not form the basis for the charges contained in Counts III, V, and VII; and (3) evidence in support of an entrapment by estoppel defense under *United States v. Tallmadge,* 829 F.2d 767 (9th Cir.1987), based on allegations that Brebner was misled by government agents and officials into believing that he could lawfully purchase firearms.

After determining that he would consider the Government's motion *in limine* as a timely motion to dismiss brought by Brebner prior to trial, *see* Fed.R.Crim.P. 12(f), the district judge, after a hearing, ruled in favor of the Government. In light of the court's adverse ruling, Brebner entered a conditional plea of guilty under Fed. R.Crim.P. 11(a)(2) to Counts III through VII of the indictment, expressly preserving for review the issues ruled upon by the district court.[1] In exchange for the plea, Counts I and II were dismissed.

The district court suspended sentences of imprisonment on each of the five remaining counts of the indictment, placed Brebner on probation for a period of five years on each count to be served concurrently, imposed a $1,000 fine as to Count IV, and a $250 special assessment fee. This appeal followed.

## II.

Brebner contends that his firearms convictions on Counts III, V, and VII should be reversed because his prior state felony convictions, which serve as the predicate offenses for these counts, have been expunged under state law. According to the indictment, these possession offenses occurred prior to November of 1986.

In Count III, Brebner was charged with violating 18 U.S.C.App. § 1202(a)(1), which was in effect at the time of the alleged offenses, and which proscribed the receipt, possession, or transportation in commerce of any firearm by "[a]ny person who ... has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony...." 18 U.S.C.App. § 1202(a)(1) (1982). In Counts V and VII, Brebner was charged with violations of 18 U.S.C. § 922(h)(1), which was in effect at the time of the alleged offenses, and which provided, in relevant part, that "[i]t shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to receive any firearm ... which has been shipped or transported in interstate ... commerce." 18 U.S.C. § 922(h)(1) (1982).

These two statutes were affected by Congress' restructuring of the federal firearms statutes through its enactment of the Firearms Owners Protection Act (the "Act") on May 19, 1986. In repealing section 1202(a) and amending section 922(h),[2] the Act incorporated the firearms possession offenses previously set forth in sections 1202(a) and 922(h) into an amended section 922(g). P.L. 99–308 §§ 102(6)(D), 102(7), 100 Stat. 452; P.L. 99–308 § 104(b), 100 Stat. 459 (1986). The effective date of the Act repealing and amending these two statutes was set forth as 180 days after May 19, 1986, the date of enactment of the Act. P.L. 99–308 § 110(a), 100 Stat. 460 (1986). Thus, the now repealed section

---

1. There is some indication that the district judge may have intended later to limit his ruling to only one of the three issues raised in the Government's motion *in limine,* namely the viability of an entrapment by estoppel defense. The judge's initial ruling, however, expressly rejected defense counsel's offer of proof made in opposition to the Government's motion. This offer of proof plainly raised the issue of the expungement of Brebner's prior state court convictions which Brebner now raises on appeal.

The written plea agreement approved by the court, moreover, expressly conditioned Brebner's plea on his right to appeal the adverse ruling of the court. We therefore consider the expungement issue properly preserved for appellate review.

2. Section 922(h) was amended to address a separate offense. *See* P.L. 99–308 § 102(7), 100 Stat. 452 (1986).

1202(a) and the pre-amended version of section 922(h) were applicable to Brebner. The facts upon which the charges were based were alleged to have occurred prior to the effective date of the Act.[3]

Brebner maintains that a separate provision of the Act, which amended section 921(a)(20), applies to remove his state felony convictions as predicate offenses under sections 1202(a) and 922(h) because the state felony convictions have been expunged under Washington law. The Act amended section 921(a)(20) to read as follows:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

P.L. 99–308 § 101(5), 100 Stat. 450 (1986).

■ As we recognized in *United States v. Gomez*, 911 F.2d 219 (9th Cir.1990), amended section 921(a)(20)'s definition of what constitutes a "conviction" as that term is used in the federal firearms statutes is now required to be determined in accordance with the jurisdiction in which the predicate conviction arose, in this case the State of Washington. *Gomez*, 911 F.2d at 220. Thus, if the jurisdiction has expunged or set aside a defendant's conviction, issued a pardon, or restored the defendant's civil rights without otherwise expressly restricting a defendant's right to possess firearms, the amendment provides

that the offense will not constitute a "conviction" under federal law. 18 U.S.C. § 921(a)(20) (Supp. IV 1986). *See Gomez*, 911 F.2d at 220–22.

Prior to the 1986 amendment to section 921(a)(20), however, the undefined term "convicted" was interpreted by the Supreme Court as "a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 111–12, 103 S.Ct. 986, 991, 74 L.Ed.2d 845 (1983). In reaffirming its earlier rulings that a guilty plea is itself sufficient to constitute a conviction, *see id.* at 112–13, 103 S.Ct. at 991–92 (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969); *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927)), the Court held that an expungement of a defendant's criminal record did not amount to a finding that the defendant was innocent of the crime to which he pleaded guilty. *Id.*, 460 U.S. at 115, 103 S.Ct. at 993. As a result, the state expungement would have no effect on the defendant's conviction under the federal firearms statutes.[4] *Id.*

In amending section 921(a)(20), it has been noted that, while there is no explicit mention of the *Dickerson* rule, "Congress' decision to adopt expressly the states' definitions of what constitutes a conviction effectively overrules *Dickerson.*" *United States v. Pennon*, 816 F.2d 527, 529 (10th Cir.), *cert. denied*, 484 U.S. 987, 108 S.Ct. 506, 98 L.Ed.2d 504 (1987). *See also United States v. Orellanes*, 809 F.2d 1526, 1528 (11th Cir.1987), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988). As we

---

**3.** These statutory provisions are also applicable to Brebner's offenses because of the general saving statute, 1 U.S.C. § 109, which provides, in relevant part, as follows:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or

prosecution for the enforcement of such penalty, forfeiture, or liability.

*See, e.g., United States v. Springfield*, 829 F.2d 860, 865 (9th Cir.1987).

**4.** Although *Dickerson* involved convictions under sections 922(g) and (h), this court has held that its principles and reasoning are also applicable to section 1202(a). *United States v. Freed*, 703 F.2d 394, 395 (9th Cir.), *cert. denied*, 464 U.S. 839, 104 S.Ct. 131, 78 L.Ed.2d 126 (1983).

explained recently, in amending section 921(a)(20) to

expressly remove[ ] a conviction as a predicate offense if the conviction were expunged or set aside, or if the felon were pardoned or granted a restoration of his civil rights ..., Congress focused on the anomaly of having a state felon's conviction nullified for purposes of state law but not for purposes of federal firearms law.

*United States v. Geyler,* 932 F.2d 1330, 1335 (9th Cir.1991).

In this case, the predicate Washington convictions which form Brebner's federal convictions under sections 1202(a) and 922(h) involve Brebner's guilty pleas in 1976 and 1977 to offenses involving the delivery of a controlled substance. In 1980, both convictions were expunged pursuant to a state expungement statute, Wash.Rev.Code § 9.95.240. Under the terms of this statute, orders of dismissal were issued by the Washington Superior Court permitting Brebner to withdraw his guilty pleas. Each order of dismissal also provided that Brebner would be relieved "from all penalties and disabilities resulting from the filing of said charge[s]."

Under *Dickerson,* however, the expungement and dismissal of Brebner's charges under Washington law would not bar his federal convictions under sections 1202(a) and 922(h) because it does not alter the historical fact of his state convictions. Thus, under federal law prior to the amendment of section 921(a)(20), Brebner would be "convicted" as that term is used in the federal firearms statutes. On the other hand, under amended section 921(a)(20), Brebner's state guilty pleas potentially would not constitute "convictions" under the firearms statutes, provided that Washington's dismissal of the charges was not expressly qualified by any firearms restrictions.

We must consider, however, whether amended section 921(a)(20) should be applied retroactively to offenses committed prior to its effective date. Along with the provisions repealing section 1202(a) and amending 922(h), the amendment to section 921(a)(20) was also enacted on May 19, 1986 as part of the Firearms Owners Protection Act. *See* P.L. 99–308 § 101(5), 100 Stat. 449–450 (1986). As previously discussed, the amendments enacted by the Act generally became effective 180 days after their date of enactment. P.L. 99–308 § 110(a), 100 Stat. 460 (1986). Significantly, however, certain provisions of the Act, which are unrelated to the amendments at issue in this case, were specifically made effective upon the date of enactment of the Act. *See* P.L. 99–308 § 110(b), 100 Stat. 461 (1986).

■ Generally, a newly-enacted statute is not deemed to have retroactive application if there is a legislative directive to the contrary. *See Bradley v. School Board of Richmond,* 416 U.S. 696, 712–13, 94 S.Ct. 2006, 2017, 40 L.Ed.2d 476 (1974) ("[A] change in the law must be given [retroactive] effect *unless* there was clear indication that it was *not* to apply in pending cases.") (emphasis in original). This is particularly true when there is an explicit legislative directive to make certain statutory provisions effective immediately and others effective at a specified date in the future.

This is exactly the situation presented here. Subsection 110(a) of the Act expressly provides that the amendments "shall become effective one hundred and eighty days after the date of the enactment of this Act." This is followed by subsection 110(b) which states that "[t]he amendments made by sections 103(b)(B), 105, and 107 of this Act shall be applicable to any action, petition, or appellate proceeding pending on the date of the enactment of this Act." Because section 921(a)(20), an amendment made applicable by section 101(5) of the Act, is not included in those amendments deemed to be effective upon enactment of the Act, we conclude that section 921(a)(20) cannot be retroactively applied to the offenses alleged in Brebner's indictment because they were all alleged to have occurred prior to 180 days after May 19, 1986. *See United States v. Holley,* 818 F.2d 351, 353 (5th Cir.1987). Accordingly, we hold that the *Dickerson* interpretation of the term "conviction" controls to uphold

Brebner's federal firearms convictions notwithstanding the expungement of his predicate state felonies.[5]

### III.

Brebner contends the district court erred by preventing him from presenting evidence of an entrapment by estoppel defense. Brebner's substantive firearms convictions arose from his possession of firearms, at least two of which had previously been purchased from federally licensed firearms dealers.

In support of Brebner's asserted entrapment by estoppel defense, counsel made a proffer before the district court. This proffer included Brebner's own testimony, testimony from two federally licensed firearms dealers involved in the gun purchases, and prospective testimony from several state and local law enforcement officials. According to Brebner, this proffer provided sufficient evidence to support his theory that he was misled by these government agents and officials into believing that the expungement of his state felony convictions made it lawful for him to purchase firearms.

Specifically, Brebner proffered that, in 1980 or 1982, he informed federally licensed firearms dealer Keith Doyle that his prior state felony convictions had been dismissed and that the state had ordered that he be released from all penalties and disabilities resulting from the filing of the charges. Prior to Brebner's plea, however, Doyle testified at trial that he was "sure [he] was unaware of" Brebner's prior felony conviction in the State of Washington when he was interviewed by Bureau of Alcohol, Tobacco and Firearms ("BATF") agents on October 28, 1986. Doyle further testified that he had no knowledge whether Brebner was required to answer "yes" to a question on a BATF firearms purchase form asking whether a firearms purchaser had ever previously been convicted of a felony, had no duty to verify the accuracy of Brebner's answer, and did not explain this and other questions on the form or make any inquiries.

Brebner also proffered the testimony of Helmut Tacke, another federally licensed firearms dealer involved in a sale of firearms to Brebner. According to an affidavit filed by defense counsel in support of the proffer,[6] Tacke "also admitted that he

---

**5.** We note that our holding places us in conflict with the Eleventh Circuit's decision in *United States v. Kolter*, 849 F.2d 541 (11th Cir.1988). In *Kolter*, the defendant was charged with a violation of section 1202(a)(1) based upon his possession of a firearm after having previously been convicted of felony burglary under state law. 849 F.2d at 542. Based on the state's subsequent restoration of his civil rights, Kolter similarly argued that amended section 921(a)(20) should apply to his prosecution under section 1202(a)(1). *Id.* at 542–43.

Like Brebner, Kolter committed the federal possession offense prior to the date that section 921(a)(20) took effect. *Id.* at 543. Also like Brebner, Kolter was tried and convicted after its effective date. *Id.* Because Kolter's case remained pending after the amendment's effective date, the Eleventh Circuit held that section 921(a)(20) applied to reverse his conviction. *Id.* at 545.

In applying section 921(a)(20) to offenses committed prior to its effective date, however, we believe the *Kolter* court erroneously relied on a finding that "no statutory directive or legislative history indicat[ed] [that] Congress intended [section] 921(a)(20) not to apply to pending cases...." *Id.* at 545. As previously discussed, sections 110(a) and (b) of the Act plainly express Congress' intent to have certain specified

amendments apply to cases pending on the date of enactment of the Act, and have the remaining amendments, including the amendment to section 921(a)(20), not apply until 180 days later. This unambiguous legislative intent compels us to find amended section 921(a)(20) inapplicable to offenses occurring prior to the specified effective date of the Act.

**6.** Brebner's proffer was authorized under Fed. R.Evid. 103(a)(2). Both parties agree that the proffer includes defense counsel's opening statement at trial, testimony presented at trial prior to the change of plea, and defense counsel's argument before the district court in response to the Government's motion *in limine*. The Government has objected, however, to including defense counsel's affidavit which was filed in support of Brebner's motion for reconsideration of the court's decision to exclude the entrapment by estoppel defense. The objection was based on several grounds, including the fact that the affidavit was attested to by defense counsel and not the declarants themselves, that there was no factual or legal basis cited by counsel to allow augmentation of the record, and that counsel had failed to seek leave of court prior to filing the affidavit.

In its January 4, 1989 order denying Brebner's motion for reconsideration, however, the dis-

made no explanation to [Brebner] as to the law nor made an[y] inquiries as to the answers provided under [the BATF form]." Tacke's actual testimony at trial, however, was that he could not remember any conversation with Brebner regarding his answers to questions appearing on the form. Significantly, Tacke also testified, and it is undisputed, that prior to Brebner's purchase of the firearms, Tacke had had no prior dealings with Brebner in either a business or a social capacity.

Finally, Brebner proffers his own testimony as well as the prospective testimony of several state and local law enforcement officials who he claims would corroborate his belief that, as a result of the expungement of his state felonies, he could lawfully possess firearms. First, Brebner claims that Earl Winans, a member of the local county sheriff's department, would have testified that he and Brebner had discussed the dismissal of Brebner's state court charges and that Winans had agreed with Brebner that he was entitled to own firearms. Second, Brebner claims that after a reported burglary at Brebner's residence in 1985, members of the county sheriff's department returned to Brebner a handgun recovered from the burglary. Finally, Brebner claims he would have produced evidence that, in January 1986, the local police department returned a handgun to him following his arrest for possession of marijuana and carrying a concealed weapon. Defense counsel's affidavit asserts that the police department, while initially believing that as a convicted felon he was not entitled to the gun, subsequently returned the gun after Brebner produced the state court order dismissing his state felony convictions.

■ A district court's determination that there exists no evidence sufficient to raise a valid defense is analogous to a determination that a jury instruction relating to a defendant's theory of the case is not warranted by the evidence. *See, e.g., United*

*States v. Brandon,* 633 F.2d 773, 778 (9th Cir.1980) (refusal to give entrapment instruction when rational view of evidence does not support defense "constitutes a determination as [a] matter of law that the defense may not be raised"). In *United States v. Sotelo–Murillo,* 887 F.2d 176 (9th Cir.1989), this court recognized "that whether a criminal defendant has presented sufficient evidence to warrant a jury instruction on [his theory of the defense] … is predominantly a legal question." *Sotelo–Murillo,* 887 F.2d at 179. We therefore review *de novo* the district court's decision to exclude evidence of an entrapment by estoppel defense.

■ The entrapment by estoppel defense applies when an authorized government official tells the defendant that certain conduct is legal and the defendant believes the official. *United States v. Tallmadge,* 829 F.2d 767, 773 (9th Cir.1987) (citing *United States v. Hsieh Hui Mei Chen,* 754 F.2d 817, 825 (9th Cir.), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985)). "[T]he defendant must show [1] that he relied on the false information and [2] that his reliance was reasonable." *Id.* at 774 (citing *United States v. Timmins,* 464 F.2d 385, 387 (9th Cir.1972)). A defendant's reliance is reasonable if " 'a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.' " *Id.* (quoting *United States v. Lansing,* 424 F.2d 225, 227 (9th Cir.1970)).

In *Tallmadge,* as here, the defendant was convicted under sections 1202(a)(1) and 922(h)(1) of unlawful receipt and possession of firearms after having been previously convicted of felony crimes and crimes punishable by more than one year of imprisonment. *Id.* at 768, 771. Undisputed evidence established that Tallmadge had relied on the misrepresentations of a federally licensed firearms dealer that a person

---

trict judge did not make any ruling on the Government's objections or specify whether he considered the affidavit in making his determination. Because we conclude that the representations made in the affidavit fail to lend any

meaningful support to Brebner's entrapment by estoppel defense, we need not consider whether the affidavit was properly before the district court.

with a prior state felony conviction could purchase a rifle if the prior offense had subsequently been reduced to a misdemeanor. *Id.* at 774. In noting that Tallmadge had a right to rely on the dealer's representations, this court found that, as licensees of the federal government, firearms dealers have been made federal agents with the affirmative duty to insure the lawfulness of the firearms transaction. *Id.* The court then found Tallmadge's reliance on the firearm dealer's misleading information reasonable because (1) Tallmadge had also sought and obtained advice from an experienced criminal lawyer that he could purchase a rifle, and (2) a state court judge, at the prosecutor's suggestion, had previously warned him against carrying a concealable firearm, thereby implying that it was lawful for Tallmadge to obtain a nonconcealable firearm. *Id.* at 775. Holding that under these circumstances the defendant's convictions violated due process, we reversed Tallmadge's convictions. *Id.*

In this case, Brebner claims he was entitled to rely on misrepresentations by two federally licensed firearms dealers, Keith Doyle and Helmut Tacke, in addition to several state and local law enforcement officials, who he claims misled him into believing that the expungement of his predicate state felony convictions enabled him to lawfully purchase firearms. We disagree.

■■■ At the outset, we note that section 1202(a) and 922(h) violations are not specific intent crimes requiring proof of scienter. *See id.* at 772 (citing *United States v. Pruner*, 606 F.2d 871, 873–74 (9th Cir.1979)). Thus, our focus is not on any belief on Brebner's part that the expungement of his state crimes made it lawful for him to purchase firearms under federal law. *See, e.g., United States v. Smith*, 940 F.2d 710, 714 (1st Cir.1991) ("[The defendant's] personal belief as to the legality of his conduct was irrelevant under the statute. The government need only prove that [the defendant] knew he possessed the firearms, not that he understood that such possession was illegal."). Instead, entrap-

ment by estoppel rests on a due process theory which focuses on the conduct of the government officials rather than on a defendant's state of mind. *See id.* at 712; *United States v. Hedges*, 912 F.2d 1397, 1405 (11th Cir.1990) (noting that entrapment by estoppel is based on principles of fairness, not a defendant's mental state). As a result, it can be raised as a defense to offenses that do not require proof of specific intent. *Smith*, at 712; *Hedges*, 912 F.2d at 1405; *Tallmadge*, 829 F.2d at 773. In short, the defense involves the "concept of unintentional entrapment by an official who mistakenly misleads a person into a violation of the law." *Tallmadge*, 829 F.2d at 773.

■■ In this case, Brebner's proffer fails to persuade us that there was government conduct sufficient to amount to the type of misleading that *Tallmadge* requires to justify an entrapment by estoppel defense. The substance of Brebner's own proffered testimony amounts to conversations with Doyle in 1980 or 1982 when the effect of the expungement of Brebner's state convictions on his ability to purchase firearms was discussed. As we interpret Brebner's argument, this conversation should have led Doyle to be on notice at least to make inquiries about the prior convictions at the time that Brebner actually purchased the firearms. Critically, however, there is no evidence in the record indicating that Doyle expressly told Brebner that it was lawful for him to purchase the firearms. As for firearms dealer Helmut Tacke, there is similarly no evidence of any affirmative misrepresentation as to the legality of the purchase. Instead, Brebner's proffer consists merely of evidence that, at the time of the purchase, Tacke failed to make any inquiries as to the status of Brebner's prior convictions.

This evidence is in sharp contrast to the type of evidence we have held sufficient to justify an entrapment by estoppel defense. In *Tallmadge*, after the firearms dealer initially noted that the defendant may have a problem purchasing firearms due to his prior felony conviction, "Tallmadge testified that [the firearms dealer] agreed that

there was no problem owning a gun because the felony conviction had been reduced to a misdemeanor." *Id.* at 770. Likewise in *United States v. Clegg,* 846 F.2d 1221 (9th Cir.1988), evidence showed that high-ranking United States military officials actively solicited, encouraged and assisted the defendant's smuggling of arms from Pakistan to Afghan rebels. *Clegg,* 846 F.2d at 1222–23.

Here, by contrast, there is no evidence of any of the type of affirmative misleading that was present in either *Tallmadge* or *Clegg.* At most, the evidence reveals that Brebner advised Doyle of the expungement of his state convictions sometime prior to his purchase of the firearms, and that neither Doyle nor Tacke made any further inquiries. While these firearms dealers may have breached their obligations to make sufficient inquiries regarding the legality of the transaction, we nevertheless conclude that Brebner has failed to show the type of affirmative misleading on the part of these dealers that is required to justify an entrapment by estoppel defense. *See Tallmadge,* 829 F.2d at 775 n. 1 ("The defense ... is inapplicable if the defendant is not misled."); *see also Raley v. Ohio,* 360 U.S. 423, 438, 79 S.Ct. 1257, 1266, 3 L.Ed.2d 1344 (1959) (finding entrapment where state engaged in "active misleading"); *Smith,* 940 F.2d at 712 (rejecting entrapment by estoppel defense because, while BATF agent purportedly told defendant that he wanted him to retain guns to assist in undercover investigation, agent never expressly told defendant that possession of firearms would be legal); *Lavin v. Marsh,* 644 F.2d 1378, 1382 (9th Cir.1981) ("[T]o invoke estoppel against the Government, the party claiming estoppel must show 'affirmative misconduct' as opposed to mere failure to inform or assist.") (citation omitted); *Santiago v. INS,* 526 F.2d 488, 491 (9th Cir.1975) (enbanc) ("[T]he rule of estoppel ... can only be invoked if the governmental conduct complained of amounts to 'affirmative misconduct'....") (citation omitted), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). We therefore conclude that there was no "evidence upon which the jury could rationally sustain the defense." *United States v. Jackson,* 726 F.2d 1466, 1468 (9th Cir.1984) (per curiam).

■ We also reject Brebner's contention that evidence of his reliance on several state and local law enforcement officials was sufficient to justify an entrapment by estoppel defense. Instead, we conclude that Brebner was not entitled to rely on any representations made by state or local officials because, unlike situations where estoppel has been upheld, these officials lacked the authority to bind the federal government to an erroneous interpretation of federal law.

In *Tallmadge,* for example, the misrepresentations were made by federally licensed firearms dealers who, because of their affirmative duty to determine the lawfulness of the transaction, were acknowledged to be federal agents upon whom the court held purchasers had a right to rely. 829 F.2d at 774. Likewise in *Clegg,* we held that the defendant had the right to rely on American military officials who misrepresented the lawfulness of transporting firearms because they were "officials of the highest rank." 846 F.2d at 1224.

Moreover, the three Supreme Court cases relied on by the *Tallmadge* court in upholding the validity of the entrapment by estoppel defense each involved affirmative misleading on the part of officials duly authorized to render advice as to the legality of the conduct at issue. Thus, in *Raley,* the chairman of a state commission erroneously advised testifying witnesses that they had a state constitutional privilege against self-incrimination when invoking such a right was, at the time, actually a violation of state law. *See Tallmadge,* 829 F.2d at 773 (citing *Raley,* 360 U.S. at 425, 438–39, 79 S.Ct. at 1259, 1266–67). Likewise in *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), demonstrators who were granted permission by the chief of police to picket across the street from a courthouse were later arrested for refusing to comply with a sheriff's order to disperse. *See id.* (citing *Cox,* 379 U.S. at 569–70, 85 S.Ct. at 483). Finally, in *United States v. Pennsylvania Indus. Chem.*

*Corp.*, 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973), the Court "held that it was error to deny a corporate defendant the right to present evidence that it had been affirmatively misled by the responsible administrative agency into believing that the law did not apply in this situation." *Id.* at 774 (citing *Pennsylvania Indus. Chem. Corp.*, 411 U.S. at 670–75, 93 S.Ct. at 1814–17). *See also United States v. Evans*, 712 F.Supp. 1435, 1442–43 (D.Mont. 1989) (alleged BATF sanctioning of criminal conduct held to constitute valid defense to federal firearms offenses charged in indictment), *aff'd*, 928 F.2d 858 (9th Cir.1991).

■ Thus, in asserting an entrapment by estoppel defense to charges of violating federal law, a defendant is required to show reliance either on a federal government official empowered to render the claimed erroneous advice, or on an authorized agent of the federal government who, like licensed firearms dealers, has been granted the authority from the federal government to render such advice. *See United States v. Etheridge*, 932 F.2d 318, 321 (4th Cir.1991) (estoppel defense to federal firearms charge rejected because based on advice of state trial judge rather than official of federal government) (citing *United States v. Bruscantini*, 761 F.2d 640, 641–42 (11th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 271, 88 L.Ed.2d 233 (1985)); *United States v. Allen*, 699 F.2d 453, 458 n. 1 (9th Cir.1982) (entrapment defense based on alleged misrepresentations of state parole officer rejected because no claim that any federal officials induced unlawful act).

In reaching this conclusion, we distinguish our holding in this case from that in *Tallmadge*. There, we found that "Tallmadge's reliance on the firearm dealer's misleading information was reasonable in light of his attorney's legal opinion that he could purchase a rifle, and the comments of the state trial judge and the deputy district attorney at the probation termination proceedings." *Id.* at 775. Rather than authorizing a defendant's reliance on non-federal officials, we analyzed this evidence in regard to the second requirement of the entrapment by estoppel test, namely the reasonableness of the defendant's reliance on the licensed firearms dealer. *See id.* at 773. Thus, rather than any reliance on the private attorney or the state officials, it was the defendant's reliance on the federally licensed firearms dealer's misrepresentations which triggered the application of the defense. *See id.* at 775.

### IV.

■ We also conclude that Brebner was properly convicted of charges of making false statements in the acquisition of firearms in violation of 18 U.S.C. § 922(a)(6), which, in relevant part, makes it unlawful

for any person in connection with the acquisition ... of any firearm ... from a licensed ... dealer ... knowingly to make any false or fictitious ... written statement ... intended or likely to deceive such ... dealer ... with respect to any fact material to the unlawfulness of the sale or other disposition of such firearm ... under the provisions of this chapter.

18 U.S.C. § 922(a)(6) (1982).

The false statement charges contained in Counts IV and VI of the indictment stemmed from Brebner's "no" answer to question 8b on the BATF form 4473 prior to his purchase of firearms from two federally licensed firearms dealers. In relevant part, question 8b reads as follows:

8. CERTIFICATION OF TRANSFEREE (Buyer)—

An untruthful answer may subject you to criminal prosecution. Each question must be answered with a "yes" or "no"....

b. Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year? (Note: ... *[A] "yes" answer is required if a conviction has been discharged, set aside, or dismissed pursuant to an expungement or rehabilitation statute* ....)

(Emphasis added.) Question 8 was followed by a buyer certification which Brebner signed that stated as follows:

I hereby certify that the answers to the above are true and correct. I understand that a person who answers "Yes" to any of the above questions is prohibited from purchasing and/or possessing a firearm, except as otherwise provided by Federal law. I also understand that the making of any false oral or written statement or the exhibiting of any false of misrepresented identification with respect to this transaction is a crime punishable as a felony.

We have specifically held that to prove a violation of section 922(a)(6), knowledge of the law is not required. *United States v. Williams*, 685 F.2d 319, 321 (9th Cir.1982). Instead, "[t]he government need only show that [the defendant] made a statement he knew to be false not that he knew he was violating the law." *Id.* (Citations omitted). *See also United States v. Harrelson*, 705 F.2d 733, 736 (5th Cir.1983) ("Specific intent is not an essential element of a 922(a)(6) offense; the government need only prove that the defendant imparted 'false information, with the general intention of deceiving or likely to deceive' the dealer.") (citation omitted); *United States v. Cody*, 702 F.2d 147, 148 (8th Cir.1983) (per curiam) (state court's expungement of state felony conviction has no effect on prior federal conviction under section 922(a)(6)); *United States v. Lawrence*, 680 F.2d 1126, 1128 (6th Cir.1982) (per curiam) (specific intent not required for conviction under section 922(a)(6)); *United States v. Ziegenhagen*, 420 F.Supp. 72, 74 (E.D.Wis. 1976) (defendant's belief that state's restoration of civil rights made firearms transaction lawful irrelevant under section 922(a)(6)).

Here, there is no contention that Brebner was unaware of his prior convictions when he denied their existence on the BATF forms. On the contrary, the form's clearly worded instruction requiring a "yes" answer to question 8b, even if his prior convictions had been dismissed, supports the conclusion that Brebner knew his negative answers must have been false.

With the enactment of amended section 921(a)(20), federal law enforcement agencies responsible for enforcing the nation's gun laws now face a more complex task of determining whether persons can be prosecuted after a state has expunged their predicate offenses or restored their civil rights. *See Geyler*, 932 F.2d at 1336 (noting that "the rule giving effect to a state's restoration of a federal felon's rights is more cumbersome to administer than one in which only the federal government could take action affecting federal convictions"). It is essential that accurate and truthful information be provided to these agencies by prior offenders in order not to frustrate this task.

AFFIRMED.