142 F.3d 446
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
United States of America, Plaintiff--Appellee,
v.
Amado Gerry LOPEZ, Defendant--Appellant.
 No. 97-30221.
D.C. No. CR-96-00042-CCL.
 United States Court of Appeals,
Ninth Circuit.
 .
Argued and Submitted Mar. 5, 1998.
Decided Apr. 7, 1998.
 
 Appeal from the United States Court for the District of Montana Charles C. Lovell, District Judge, Presiding.
 Before SCHROEDER, ALARCON and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Amado Lopez ("Lopez") was convicted by a jury of the crime of being a convicted felon in possession of firearms in violation of 18 U.S.C. § 922(g). The jury was informed that Lopez stipulated that he had been convicted of a felony.
 
 
 3
 In this appeal, Lopez asserts that the following rulings by the district court were erroneous. Prior to trial, the district court granted the Government's in limine motion to preclude Lopez from presenting evidence to support the defense of entrapment by estoppel. The court ruled that Lopez could not call a defense witness who was present in the courtroom in violation of an order excluding all witnesses. The court also admitted evidence, over objection, that Lopez was in possession of firearms six months after the sale of a Winchester rifle. The court found this evidence relevant to the credibility of the testimony given by Lopez's wife.
 
 
 4
 We affirm because we conclude that the district court's rulings in each instance were not erroneous. We discuss each of Lopez's contentions and the facts pertinent thereto under separate headings.
 
 
 5
 * ENTRAPMENT BY ESTOPPEL
 
 
 6
 Lopez's May 7, 1997 notice to the court that he intended to rely on the defense of entrapment by estoppel was supported by the statements of Cajun James ("James"), a federally licensed firearms dealer in Eureka, Montana, and Marshall M. Myers ("Myers"), a Montana attorney and former federally licensed firearms dealer. It is undisputed that Lopez did not purchase a weapon from either James or Myers. The indictment charged that Lopez purchased the weapon in question from Matthew Stofey ("Stofey"). James' statement reads as follows:
 
 
 7
 Within days of Mr. Lopez becoming a United States citizen, he came to me to inquire about his ability to own a firearm. I told him that to the best of my knowledge he was able to purchase a firearm upon receiving (sic) his citizenship. As a licensed representative of the B.A.T.F., I researched the laws available to me and could find no reason to deny his 2nd Amendment rights awarded him by his newly acquired citizenship. I then informed him of my findings.
 
 
 8
 In a statement dated May 5, 1997, and addressed "To Whom It May Concern," Myers asserted:
 
 
 9
 On or about the latter part of April, 1994, I was approached by Jerry Lopez to research his right to carry a firearm in Montana. Mr. Lopez informed me that while he was a legal alien living in Florida, he was convicted on a drug violation in the state of Florida. He then stated that he served some time in prison and was released after an appeals judge overturned the decision.
 
 
 10
 ....
 
 
 11
 I told Mr. Lopez that based on what he had told me, that I didn't see any problem with his owning a rifle in Montana [in accordance with M.C.A. § 46-18-801], but that he should check with his attorney in Florida, as to applicable Florida law.
 
 
 12
 The information given to Mr. Lopez was based on my experience as a Montana attorney, juvenile public defender for Lincoln County, Montana, and as a former federal firearms licensed dealer.
 
 
 13
 On May 16, 1997, the Government filed a motion in limine requesting the court to prohibit Lopez from relying on the testimony of James and Myers to prove his defense of entrapment by estoppel. Responding to an inquiry by the court during argument on the Government's motion, defense counsel informed the court that on the Firearms Transaction Record, Lopez "answered no to the question of whether he had a prior felony conviction." The court ruled that Lopez would not be permitted to rely on the defense of entrapment by estoppel.
 
 
 14
 Lopez argues that the defense of entrapment by estoppel is available to a convicted felon who relies on a representation of a federal firearms licensee, even if this licensee did not sell him a weapon. We review de novo a district court's decision that a defendant may not rely on the defense of entrapment by estoppel. See United States v. Brebner, 951 F.2d 1017, 1024 (9th Cir.1991).
 
 
 15
 The Government maintains that Lopez has "abandoned, forfeited or waived" the defense of entrapment by estoppel. Lopez called his wife to testify that he never possessed the firearms described in the indictment. The Government contends that this evidence is inconsistent with Lopez's defense of entrapment by estoppel that Lopez cannot be found guilty of possessing a firearm because he did so in reliance on a federal firearms licensee's erroneous representation. We agree with the Government that Lopez asserted inconsistent defenses.
 
 
 16
 Under the law of this circuit, however, an accused may present inconsistent defenses. See United States v. Demma, 523 F.2d 981, 985 (9th Cir.1975) (en banc). In Demma, we held that "the rule of inconsistent defenses must extend to entrapment." Id. Accordingly, Lopez is not barred from requesting review of the district court's May 19, 1997 order granting the Government's motion in limine to bar the defense of entrapment by estoppel.
 
 
 17
 While ignorance or mistake of the law is generally not a defense, the Supreme Court has created an exception where a party legitimately relies on the false or misleading representations of a government official. See Raley v. Ohio, 360 U.S. 423, 425-26, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959); Cox v. Louisiana, 379 U.S. 559, 571, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). "Entrapment by estoppel applies when an official tells the defendant that certain conduct is legal and the defendant believes the official." United States v. Hsieh Hui Mei Chen, 754 F.2d 817, 825 (9th Cir.1985) (citing Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965)). The defense is based on principles of fairness and due process and focuses on the conduct of the government official rather than the defendant's state of mind. See Brebner, 951 F.2d at 1025.
 
 
 18
 To prevail under an entrapment by estoppel theory, the defendant must show 1) that an authorized official was involved; 2) that the defendant relied on false or misleading information provided by the official; and 3) that the defendant's reliance was reasonable. Id. Reliance on misleading information given by an official is reasonable if "a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries." United States v. Lansing, 424 F.2d 225, 227 (9th Cir.1970).
 
 
 19
 In United States v. Tallmadge, 829 F.2d 767 (9th Cir.1987), we held that a federal firearms licensee may be considered a government official for purposes of the defense of entrapment by estoppel. Tallmadge was convicted of a felony offense that had been reduced to a misdemeanor. He truthfully informed the federal firearms licensee who sold him the weapon "of all the relevant historical facts" concerning his conviction and sentence. Id. at 774. Tallmadge relied on the representation of that federal firearms licensee that his purchase and possession of a firearm was lawful. See id.
 
 
 20
 The facts presented by Lopez are readily distinguishable from those we relied on in our decision in Tallmadge. Lopez did not purchase a firearm from James. Lopez did not fill out a U.S. Department of Treasury Firearms Transaction Record in the presence of James. Thus, James did not give Lopez any advice regarding the answers he should give in filling out the form. In Tallmadge, the defendant answered "no" to the question whether he had been convicted of an offense punishable by imprisonment for a time exceeding one year, only after being erroneously informed by a federal firearms dealer that this was the correct response. See id . at 768.
 
 
 21
 The offer of proof Lopez made to the court on May 7, 1997, indicates that he did not truthfully inform James of "all the relevant historical facts." Lopez did not represent to the court in his May 7, 1997 proffer that he informed James that he had completed a five-year term of probation after being convicted of a felony. Instead, the offer of proof indicates that Lopez asked James if it would be lawful for him to purchase a firearm now that he had become a United States citizen. Thus, Lopez has not demonstrated that his reliance on James' representations was reasonable despite Lopez's failure to disclose the relevant facts.
 
 
 22
 Tallmadge is also inapplicable to Lopez's reliance on Myers' advice because Myers was no longer a federal firearms licensee when he advised Lopez. Application of the Tallmadge rule is limited to the representation of "an authorized agent of the federal government who, like licensed firearms dealers, has been granted the authority from the federal government to render such advice." Brebner, 951 F.2d at 1026. Furthermore, Myers informed Lopez he was not familiar with Florida law regarding the effect of the reversal of a sentence on the judgment of conviction. Myers informed Lopez that he should consult his attorney in Florida regarding his right to own a firearm. This advice put Lopez on notice that he should make further inquiry before purchasing a firearm. See Lansing, 424 F.2d at 227. Lopez has failed to demonstrate that his reliance on Myers' advice, without further inquiry, was reasonable.
 
 
 23
 Our holding in Tallmadge was limited to the effect of an erroneous representation made by a federal firearms licensee who sold a weapon to the convicted felon. We stated:
 
 
 24
 The prosecution and conviction of Tallmadge for the receipt and possession of firearms, after he was misled by the government agent who sold him the weapons into believing that his conduct would not be contrary to federal law, violated due process.
 
 
 25
 Tallmadge, 829 F.2d at 775.
 
 
 26
 Here, it is undisputed that the person who sold and delivered the Winchester rifle described in the indictment did not represent to Lopez that he could lawfully possess it. Lopez failed to demonstrate in his May 7, 1997 offer of proof that he informed a government agent of all the relevant historical facts regarding his felony conviction or reasonably relied on the representations of a federal firearms licensee. Therefore, we hold that the district court did not err in concluding that the defense of entrapment by estoppel was not supported by facts presented by Lopez prior to the court's May 19, 1997 order granting the Government's motion in limine.
 
 II
 REJECTION OF DEFENSE WITNESS
 
 27
 Lopez asserts that the district court abused its discretion in refusing to allow a defense witness to testify. The witness had remained in the courtroom during the presentation of the prosecution's case in violation of an exclusion order. We review the imposition of a sanction for a violation of Rule 615 of the Federal Rules of Evidence for abuse of discretion. See United States v. Avila-Macias, 577 F.2d 1384, 1389 (9th Cir.1978) ("The appropriate sanction for violation of a witness exclusionary rule is a matter which lies within the sound discretion of the trial court.").
 
 
 28
 Rule 615 provides: "At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witness." Fed. Rule Evid. 615. In the instant case, the district court granted the Government's motion for witness exclusion to be in effect as soon as witness testimony began in the proceedings.
 
 
 29
 The Supreme Court has held that if a witness violates a trial court's exclusionary order, he or she is not automatically disqualified from testifying. See Holder v. United States, 150 U.S. 91, 92, 14 S.Ct. 10, 37 L.Ed. 1010 (1893). Rather, there must be particular circumstances justifying disqualification. See Taylor v. United States, 388 F.2d 786, 788 (9th Cir.1967). The term "particular circumstances" has been interpreted to mean "some indication the witness was in court with the consent, connivance, procurement or knowledge of the appellant or his counsel." Id. (citations and internal quotation marks omitted); see also United States v. Hobbs, 31 F.3d 918, 922 (9th Cir.1994). Therefore, in determining whether exclusion was an appropriate sanction in this case, considerable weight must be given to whether Lopez or his attorney knew of or consented to the violation of the exclusion order. See United States v. English, 92 F.3d 909, 913 (9th Cir.1996).
 
 
 30
 The district court did not abuse it discretion in excluding Gallegos' testimony because the record clearly indicates that Lopez's attorney knew that Gallegos was in the courtroom in violation of the court's exclusionary order.
 
 III
 ADMISSIBILITY OF IMPEACHMENT EVIDENCE
 
 31
 Lopez also challenges the district court's admission of rebuttal testimony that he was in possession of firearms six months after the alleged criminal violation. We review the court's admission of evidence for abuse of discretion. See United States v. Hicks, 103 F.3d 837, 843 (9th Cir.1996).
 
 
 32
 To support Lopez's defense that he did not possess the firearms set forth in the indictment, Lopez's wife testified on direct examination that she was aware of her husband's prohibited status. She further testified that she kept all guns out of her husband's possession in a locked cabinet to which she held the key. On cross-examination Mrs. Lopez testified that her husband always took steps to make sure that he wasn't around firearms. She replied affirmatively to a question whether "[h]e never wore one like in a waistband or anything like that."
 
 
 33
 In rebuttal, the Government called Detective Steve Hurtig ("Hurtig") of the Lincoln County Sheriff's Department. Hurtig testified that during an interview at Lopez's residence in April, 1995 he saw Lopez remove a two-and-a-half inch pistol from his waistband. Hurtig also observed a shotgun and an "SKS" type rifle with a banana clip. The court overruled Lopez's objection to Hurtig's testimony and gave the jury an instruction limiting the use of this evidence to test Mrs. Lopez's credibility.
 
 
 34
 Following the presentation of Hurtig's testimony, Lopez moved for a mistrial claiming that Hurtig's testimony was irrelevant and unduly prejudicial to his case. The district court ruled that the rebuttal testimony was in direct contradiction to Mrs. Lopez's testimony and that it caused no undue prejudice. We agree.
 
 
 35
 Impeachment testimony is highly relevant to the credibility of a witness. See United States v. Tom, 640 F.2d 1037, 1039 (9th Cir.1981). The evidence of Lopez's subsequent possession of firearms directly contradicted Mrs. Lopez's testimony that the guns were kept in a locked cabinet because of her husband's status.
 
 
 36
 Impeachment testimony by its very nature is prejudicial because it's purpose is to attack the credibility of a witness. Particularly where the veracity of a key witness is challenged, impeachment evidence is necessary for the jury to evaluate his or her credibility. See id. at 1039-40. While Hurtig's testimony may have been prejudicial, it was highly probative of Mrs. Lopez's credibility. The district court did not abuse its discretion in admitting evidence that directly contradicted Mrs. Lopez's attempt to persuade the jury that her husband did not have guns in his possession because he knew that as a convicted felon, he was prohibited from doing so.
 
 
 37
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3