977 F.2d 593
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerome Isodore KAHN, Defendant-Appellant.
 No. 91-50589.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 20, 1992.
Decided Oct. 20, 1992.
 
 Before WILLIAM A. NORRIS, REINHARDT and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jerome Isodore Kahn appeals his conviction for engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (1988) (the "kingpin" statute). Kahn claims (I) the district court erred in denying his request for discovery of materials relevant to an "equitable estoppel" defense, and (II) he did not engage in a continuing criminal enterprise. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Khan disputes the denial of his motions for discovery, claiming he is entitled to inspect (A) internal government memoranda relating to the legality of selling precursor chemicals for the production of methamphetamine, and (B) Drug Enforcement Administration ("DEA") reports on his companies, or on contact between DEA agents and his employees. He claims the discovery is relevant to a defense of reliance on official statements that his conduct was legal. This defense is viable, United States v. Clegg, 846 F.2d 1221, 1223-24 (9th Cir.1988) (per curiam) (Clegg II ), and evidence relevant to it is discoverable, Brady v. Maryland, 373 U.S. 83 (1973).
 
 
 4
 We review for abuse of discretion the denial of Kahn's motions. United States v. Clegg, 740 F.2d 16, 18 (9th Cir.1984) (Clegg I ). We reject Kahn's analogy between discovery requests and jury instructions, and so reject his suggestion that we review de novo the district court's decision.
 
 
 5
 There was no abuse of discretion in denying Kahn's discovery motion relating to internal governmental memoranda. Kahn does not claim he ever read or possessed any internal governmental memoranda relating to the legality of selling precursor chemicals. Accordingly, the memoranda are irrelevant to the claim that he relied on an official endorsement of selling the precursor chemicals, and so are not discoverable. See Clegg II, 846 F.2d at 1224 ("In each of these [cited cases], it is clear that the actor actually relied on an official statement that certain conduct was not unlawful") (Skopil, J., dissenting); United States v. Dupuy, 760 F.2d 1492, 1501 & n. 3 (9th Cir.1985) ("Materiality is the touchstone in the determination of whether evidence qualifies as Brady material.").[1]
 
 
 6
 We also conclude there was no abuse of discretion with respect to Kahn's motion to discover reports on conversations between DEA Special Agent Ron D'Ullisse, and Kahn's former partner, Perry Miller. According to Kahn, Special Agent D'Ullisse told Miller that selling precursor chemicals was "not illegal"; Miller, now deceased, cannot confirm or deny Kahn's claim. While this evidence is marginally related to Kahn's asserted defense, we cannot say the district court abused its discretion in denying his discovery motion.
 
 
 7
 Kahn was not charged with the mere selling of chemicals. He was charged with engaging in a continuing criminal enterprise (Count I) and conspiracy to manufacture methamphetamine (Count II). Both charges alleged that Kahn had knowingly and intentionally participated in the illegal manufacture of drugs, not just the selling of precursors.
 
 
 8
 This distinction renders imperfect Kahn's analogy to Clegg II. In Clegg II, the government had apparently given Clegg permission to do precisely that for which he was indicted. Here, Kahn does not contend the government told him it was legal knowingly to supply precursor chemicals to illegal manufacturers of methamphetamine or that it was legal knowingly to assist them in their illegal and clandestine enterprises. All Kahn claims is that his deceased partner was told by Agent D'Ullisse that the "sales of precursor chemicals was not illegal." This distinction also applies to the other cases cited by Kahn: Raley v. Ohio, 360 U.S. 423 (1959); Cox v. Louisiana, 379 U.S. 559 (1965); United States v. Penn. Indus. Chem. Corp., 411 U.S. 655 (1973); United States v. Talmadge, 829 F.2d 767 (9th Cir.1987); United States v. Albertini, 830 F.2d 985 (9th Cir.1987). In each, citizens claimed they had been affirmatively misled into believing that conduct they had subsequently engaged in was legal when it was not.
 
 
 9
 This waters down substantially the materiality of any alleged memo containing the information sought by Kahn because the information itself falls short of providing a basis for estopping the government from prosecuting Kahn for the precise charges contained in the Information. It is once removed from the target and does not demonstrate that Kahn was affirmatively misled into believing he could knowingly supply chemicals to persons illegally manufacturing methamphetamine without breaking the law.
 
 
 10
 Moreover, the district court was confronted with a declaration from Agent D'Ullisse in which he denied categorically that he ever made such a statement to Miller. To the contrary, D'Ullisse asserted he had advised Miller of the "potential criminal liability for individuals or businesses involved in the sales of precursor chemicals commonly used in the clandestine manufacturing of methamphetamine...." Implicit in this denial is that the information sought by Kahn simply did not exist, either in a memo or elsewhere. Indeed, this is the position taken by the government both in its written opposition to the discovery request and during the hearing at which the discovery motion was argued. The government repeatedly stated that after extensive investigation, it did not "believe any such memos or legal opinions exist." It would have been more direct for Agent D'Ullisse explicitly to have stated in his declaration that he had searched the relevant files and found no memo containing the information sought, but this lack of perfection in his response is not fatal to the district courts determination. Under the circumstances, and given the deferential standard of review applied to this issue, we do not conclude that the district court abused its discretion in denying Kahn's motion and ruling against him on the issue of estoppel.
 
 II
 
 11
 Kahn also claims he improperly was convicted of operating a continuing criminal enterprise, in violation of 21 U.S.C. § 848, the kingpin statute. That statute has the following elements:
 
 
 12
 [A] person is engaged in a continuing criminal enterprise if--
 
 
 13
 (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony [sic], and
 
 
 14
 (2) such violation is a part of a continuing series of violations of this chapter or subchapter II of this chapter--
 
 
 15
 (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
 
 
 16
 (B) from which such person derives substantial income or resources.
 
 
 17
 21 U.S.C. § 848(c).
 
 
 18
 The stipulated facts in this case reveal (and Kahn concedes) that Kahn supervised five or more persons in an operation from which he obtained substantial income. See id. § 848(c)(2)(A)-(B). The dispositive questions are (1) whether Kahn "violat[ed]" any felony provision of the relevant controlled substance laws, and (2) whether the violation was "part of a continuing series of violations" of those laws. See id. § 848(c)(1)-(2).
 
 
 19
 The answers to these dispositive questions are provided by the recent case of United States v. Miskinis, No. 90-50025, slip op. 3867 (9th Cir. Apr. 10, 1992). In Miskinis, as here,
 
 
 20
 [b]y the sum of his actions--making the precursor chemicals for methamphetamine available ... with the knowledge that they would be used for an illegal purpose, and taking affirmative steps to enable ... customers to conceal their identity from DEA investigators, to evade surveillance, and to avoid the applicable reporting requirements--[the defendant] significantly aided and abetted ... manufacturer[s] of methamphetamine....
 
 
 21
 .... We ... hold that section 848 may be applied to one whose criminal conduct consists solely of aiding and abetting the criminal conduct of others, if that person is otherwise a kingpin in his own right, and if the criminal conduct aided or abetted would itself qualify under that section.
 
 
 22
 Id. at 3876.
 
 
 23
 The stipulated facts in this case track those in Miskinis. On several different occasions, Kahn aided and abetted the manufacturing of methamphetamine, see 18 U.S.C. § 2 (1988),[2] an offense which qualifies under the kingpin statute. He is a kingpin in his own right, and his conviction therefore is
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We reject Kahn's claim that the government's initial failure to prosecute him was "the 'functional equivalent of affirmative, direct communication ... that misled him into believing the sales were legal," and so we need not consider whether the documents were relevant to that claim
 
 
 [2]
 The parties stipulated that the case would be disposed of on the basis of a Superseding Information rather than an indictment. The Information alleged as Kahn's predicate acts the violation of "various felony provisions of the Controlled Substances Act ... including but not limited to Title 21, United States Code, Sections 841(a)(1) and 846...." The Information does not mention 18 U.S.C. § 2. However, the Information does allege several specific acts which are aiding and abetting offenses. Accordingly, aiding and abetting is a viable theory of predicate liability in this case. See United States v. Aiello, 864 F.2d 257, 265 (2d Cir.1988) ("the government need not specifically plead, let alone obtain convictions on, any of the predicate offenses; it simply must prove at trial a continuing series of at least three felony offenses."), cited in Miskinis, slip op. at 3877
 Further, we note that in the disposition agreement accompanying the Information, the parties agreed that the case involved the issue of "whether defendant can be liable where his liability is predicated on his aiding and abetting others in violating federal laws regarding controlled substances...." Both sides litigated the aiding and abetting issue in the court below, and both sides have briefed it here. Indeed, Kahn argues, "[t]he whole theory of criminal liability was predicated upon [Kahn's] assistance to those who actually violated the narcotics laws." Kahn had sufficient notice that aiding and abetting was a possible predicate act. See United States v. Martin, 783 F.2d 1449, 1452-53 (9th Cir.1986), disapproved on other grounds, Schmuck v. United States, 489 U.S. 705 (1989).