**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Abdulraouf Shahir BATTERJEE, aka**
**Abdul Raouf Shahir Batterjee,**
**Defendant–Appellant.**

**No. 03–10152.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 2004.

Filed March 24, 2004.

---

be appropriate for us to do so here, or to opine on what the effect would be for purposes of federal sentencing under § 2L1.2.

Dale A. Danneman and Lawrence A. Kasten, Lewis and Roca LLP, Phoenix, Arizona, for the defendant-appellant.

Howard D. Sukenic, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

Before: HUG, JR., ALARCÓN, and FLETCHER, Circuit Judges.

ALARCÓN, Circuit Judge.

Abdulraouf Shahir Batterjee appeals from the judgment of conviction for being a non-immigrant alien in possession of a firearm and a non-immigrant alien in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(5)(B), 924(a)(2). He contends that because federal officials affirmatively misled him as to his eligibility to possess firearms and ammunition under § 922(g)(5), the district court erred in rejecting his affirmative defense of entrapment by estoppel. We reverse because we conclude that the undisputed evidence establishes the defense of entrapment by estoppel.

I

Mr. Batterjee is a citizen of Saudi Arabia. He was admitted into the United States on a non-immigrant student visa in 1992 to study at Arizona State University. On the dates Mr. Batterjee purchased the firearm and ammunition that are the subject of his convictions, he was lawfully present in the United States on a non-immigrant H-1 visa.[1]

On April 18, 2001, Mr. Batterjee went to the Shooting Star gun shop in Tempe, Arizona to receive a firearm he had purchased from a gun manufacturer, Springfield Armory, Inc. Shooting Star is a federal firearms licensee. That designation permits Shooting Star to sell firearms and imposes on it the responsibility of ensuring that customers are legally authorized to purchase firearms. *See* 18 U.S.C. § 922(s)–(t) (incorporating the Brady Handgun Violence Prevention Act, Pub.L. No. 103–159 (1993)). Approximately two

---

**1.** An H-1 visa allows for temporary admission into the United States of non-immigrant aliens for employment purposes. *See* 8 U.S.C. § 1101(a)(15)(H) (stating that aliens may be admitted on a non-immigrant basis for temporary employment); 8 C.F.R. § 214.2(h)(1)(i) ("Under section 101(a)(15)(H) of the Act, an alien may be authorized to come to the United States temporarily to perform services or labor for, or to receive training from, an employer, if petitioned for by that employer.").

to three weeks prior to April 18, 2001, Mr. Batterjee had ordered and paid for a .45-caliber pistol from Springfield Armory. Mr. Batterjee could not obtain the pistol directly from Springfield Armory because it is not a federal firearms licensee. Mr. Batterjee arranged to have the pistol delivered to Shooting Star to facilitate the transfer of the pistol and complete the federally-mandated paperwork and background check.

Before Mr. Batterjee could take possession of the pistol, he was required to comply with the provisions of § 922(s)(1)(A)(i)(I) which requires an individual seeking to possess firearms to provide a statement to a federal firearms licensee containing identification information and a certification that the individual is not prohibited from possessing firearms. *See* 18 U.S.C. § 922(s)(1)(A)(i)(I), (s)(3).[2] The Bureau of Alcohol, Tobacco, and Firearms ("ATF") provides a detailed, four-page firearms transaction record, referred

to as Form 4473, to assist federal firearms dealers in complying with their duties under § 922(s)–(t). *See* 27 C.F.R. § 478.124(a) (stating that a licensee "shall not sell or otherwise dispose, temporarily or permanently, of any firearm to any person, other than another licensee, unless the licensee records the transaction on a firearms transaction record, Form 4473"). In its "Important Notices" section, Form 4473 states that it is "designed so that a [federal firearms licensee] may determine if he may lawfully sell or deliver a firearm to the person [seeking to purchase the weapon], and to alert the transferee (buyer) of certain restrictions on the receipt and possession of firearms."

Shooting Star employee Corey Burt assisted Mr. Batterjee in completing a Form 4473. It is undisputed that Mr. Batterjee responded to each of the questions presented in the Form 4473 accurately. Mr. Batterjee indicated that he was not a Unit-

---

2. Section 922(s)(1) states in pertinent part:
   [I]t shall be unlawful for any licensed importer, licensed manufacturer, or licensed dealer to sell, deliver, or transfer a handgun . . . unless—
   (A) after the most recent proposal of such transfer by the transferee—
   (i) the transferor has—
   (I) received from the transferee a statement of the transferee containing the information described in paragraph (3)
   Section 922(s)(3) reads:
   The statement referred to in paragraph (1)(A)(i)(I) shall contain only—
   (A) the name, address, and date of birth appearing on a valid identification document (as defined in section 1028(d)(1)) of the transferee containing a photograph of the transferee and a description of the identification used;
   (B) a statement that the transferee—
   (i) is not under indictment for, and has not been convicted in any court of, a crime punishable by imprisonment for a term exceeding 1 year, and has not been convicted in any court of a misdemeanor crime of domestic violence;

(ii) is not a fugitive from justice;
(iii) is not an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act);
(iv) has not been adjudicated as a mental defective or been committed to a mental institution;
(v) is not an alien who-
(I) is illegally or unlawfully in the United States; or
(II) subject to subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)));
(vi) has not been discharged from the Armed Forces under dishonorable conditions; and
(vii) is not a person who, having been a citizen of the United States, has renounced such citizenship;
(C) the date the statement is made; and
(D) notice that the transferee intends to obtain a handgun from the transferor.

ed States citizen, that he was born in Saudi Arabia, and that he was not present in the country illegally.[3]

Mr. Burt testified that when he saw that Mr. Batterjee had answered "no" to the question of whether he was a United States citizen, he "believe[d] he had to get some additional information, like a phone bill or a lease or something of that nature." Mr. Burt also stated that Form 4473 "basically tells you that, to get some additional information. Basically says he said no.to [Question 9 *l*], and he had a social security number that I needed to prove that he was in the state for 90 days." When asked whether non-immigrant visa holders were eligible to possess weapons, Mr. Burt answered: "The only thing I'm aware of is what's on the back of the form, which I follow."

Upon seeing that Mr. Batterjee answered "no" to the question regarding whether he was a United States citizen, Mr. Burt requested the assistance of Bill Rozakis, the store owner. Mr. Rozakis testified that he believed Mr. Batterjee could possess the firearm so long as he could also provide government-issued photo identification and proof of residency in Arizona for ninety days or more. The record reflects the following colloquy:

Q: [The prosecutor] Okay. And what was Mr. Burt's concern that he wanted you to look at?

A: [Mr. Rozakis] Any time someone answers "no" to [Question 9 *l*], we need further documentation.

Q: And what further documentation did you need?

A: First of all we need the valid government-issue photo ID. In addition, it says utility bill, lease agreement that would establish residency for 90 days in the state of Arizona.

Q: Did you have a conversation with Mr. Batterjee about that?

A. Yes. I did or I relayed [the information] to Corey, one of the two.

Mr. Batterjee provided the additional information requested by Mr. Rozakis and Mr. Burt. Mr. Batterjee did not inform Mr. Rozakis or Mr. Burt that he was in the United States as a non-immigrant pursuant to a work visa. Form 4473 did not require that an alien lawfully present in the United States specify the type of visa he or she had been issued. A background check of Mr. Batterjee through the National Instant Criminal Background Check System indicated that Mr. Batterjee had no criminal record that would bar him from possessing a firearm. Mr. Batterjee paid the fifteen-dollar transfer fee and took possession of the pistol. Mr. Batterjee also purchased ammunition from Mr. Burt.

In 1998, prior to Mr. Batterjee's purchase of the pistol and the ammunition, Congress amended § 922(g)(5) to prohibit—with exceptions not applicable here—

---

**3.** The questions pertaining to alienage and citizenship in the version of Form 4473 completed by Mr. Batterjee include Question 7, "Place of Birth," and "State or Foreign Country," Question 8, "Social Security Number," and "Alien Identification Number," Question 9h, "Are you an alien illegally in the United States?", Question 9i, "Have you ever renounced your citizenship?", and Question 9 *l*, "Are you a citizen of the United States?"

Question 9m states: "If you are not a citizen of the United States, you have a State of residence only if you have resided in the State for at least 90 days prior to the date of this sale. (See Definition 6)." Definition 6 reads, "An alien who is legally in the United States shall be considered to be a resident of a State only if the alien is residing in the State and has resided in the State for a period of at least 90 days prior to the date of sale or delivery of a firearm."

persons lawfully present in the United States on non-immigrant visas from possessing firearms or ammunition.[4] The ATF did not update Form 4473 to reflect Congress's 1998 amendment to § 922(g)(5) until February 2002, nearly one year after Mr. Batterjee had purchased the pistol. Mr. Rozakis and Mr. Burt testified that their knowledge of the class of persons eligible to purchase firearms came solely from the Form 4473 that was distributed by the ATF. They indicated that they were unaware of the 1998 amendment to § 922(g)(5) when Mr. Batterjee purchased the pistol and ammunition. Thus, on the date Mr. Batterjee received possession of the pistol, Mr. Rozakis and Mr. Burt did not know that an alien admitted to the United States under a non-immigrant visa could not lawfully receive a firearm or ammunition under the 1998 amendment to § 922(g)(5).

On November 29, 2001, ATF agents searched Mr. Batterjee's home pursuant to a search warrant and discovered a pistol and ammunition. The affidavit in support of the search warrant erroneously alleged that Mr. Batterjee was in the United States illegally. On April 16, 2002, after learning that Mr. Batterjee was legally

present in the United States at the time he purchased the firearm and ammunition, federal prosecutors filed an indictment in the district court charging Mr. Batterjee in Count 1 with possession of a firearm while "being an alien admitted to the United States under a non[-] immigrant visa" in violation of 18 U.S.C. §§ 922(g)(5)(B), 924(a)(2),[5] and in Count 2 with possession of ammunition while "being an alien admitted to the United States under a non[-]immigrant visa" in violation of 18 U.S.C. § 922(g)(5)(B).

At trial, Mr. Batterjee relied upon the affirmative defense of entrapment by estoppel. The district court found that "Mr. Batterjee is an honest fellow." Nonetheless, it found that because Mr. Rozakis and Mr. Burt did not know that Mr. Batterjee was in the United States on a work visa, it would be "unreasonable to accept the entrapment by estoppel defense." In discussing its ruling, the district court commented that it had "a real problem with the concept of the fundamental due process defense of entrapment by estoppel in non-Scienter crimes, particularly in the context of licensed firearms dealers." The district court found Mr. Batterjee guilty of

---

4. Prior to 1998, § 922(g) provided:
It shall be unlawful for any person
. . . .
(5) who, being an alien, is illegally or unlawfully in the United States
. . . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
The current version of § 922(g) reads as follows:
It shall be unlawful for any person
. . . .
(5) who, being an alien—
(A) is illegally or unlawfully in the United States; or

*(B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa* (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act). . . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
(emphasis added).

5. Section 924(a)(2) states: "Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

both counts in the indictment, and denied Mr. Batterjee's motion for a new trial.

On March 24, 2003, the district court sentenced Mr. Batterjee to fourteen days imprisonment on both counts, to be served concurrently with credit for time served, followed by three years of supervised release. The district court further ordered Mr. Batterjee to pay a special assessment of $200 and a $1000 fine. Mr. Batterjee filed a timely notice of appeal.

## II

■ Mr. Batterjee's sole contention on appeal is that the district court erred in rejecting his affirmative defense of entrapment by estoppel. We review de novo a district court's legal conclusion that an entrapment by estoppel defense is unavailable. *See United States v. Brebner,* 951 F.2d 1017, 1024 (9th Cir.1991) (stating that de novo review applies to a district court's refusal to allow a defendant to present an entrapment by estoppel defense); *see also United States v. Benning,* 248 F.3d 772, 775 (8th Cir.2001) ("We review the district court's denial of the defense of entrapment by estoppel *de novo,* because it is a question of law.").

■ A defendant has the burden of proving entrapment by estoppel. *See United States v. Ramirez–Valencia,* 202 F.3d 1106, 1109 (9th Cir.2000) (per curiam) (the defendant *"must show* that the government affirmatively told him the proscribed conduct was permissible") (emphasis added); *United States v. Tallmadge,* 829 F.2d 767, 774 (9th Cir.1987) ("[T]he defendant *must show* that he relied on the false information and that his reliance was

reasonable.") (emphasis added); *see also Benning,* 248 F.3d at 775 (stating that the defendant bears the burden of proof in asserting the affirmative defense of entrapment by estoppel); *United States v. Abcasis,* 45 F.3d 39, 44 (2d Cir.1995) (same); *see generally Gilmore v. Taylor,* 508 U.S. 333, 341, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) ("States . . . may place on defendants the burden of proving affirmative defenses.").

■ "Entrapment by estoppel is the unintentional entrapment by an official who mistakenly misleads a person into a violation of the law." *Ramirez–Valencia,* 202 F.3d at 1109. It derives from the Due Process Clause of the Constitution, which prohibits convictions based on misleading actions by government officials. *Tallmadge,* 829 F.2d at 773 (citing and discussing *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), and *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959)).

■ In order to establish entrapment by estoppel,[6] a defendant must show that (1) "an authorized government official," "empowered to render the claimed erroneous advice," *Brebner,* 951 F.2d at 1024, 1027, (2) "who has been made aware of all the relevant historical facts," *Tallmadge,* 829 F.2d at 774, (3) "affirmatively told him the proscribed conduct was permissible," *Ramirez–Valencia,* 202 F.3d at 1109, (4) that "he relied on the false information," *Tallmadge,* 829 F.2d at 774, and (5) "that his reliance was reasonable." *Id.* As to this last element, we have stated that "[a] defendant's reliance is reasonable if 'a per-

---

**6.** Entrapment by estoppel is also referred to as "official misleading." *E.g., Tallmadge,* 829 F.2d at 774 (stating that the court has previously "applied the defense of official misleading"); *United States v. Timmins,* 464 F.2d 385, 386–87 (9th Cir.1972) (discussing de-

fense of "unconscionably misleading conduct"); *United States v. Lansing,* 424 F.2d 225, 227 (9th Cir.1970) (referring to entrapment by estoppel as the "misleading government conduct defense").

son sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.' " *Ramirez–Valencia*, 202 F.3d at 1109 (quoting *United States v. Lansing*, 424 F.2d 225, 227 (9th Cir.1970)).

The facts in *Tallmadge* are similar to those presented in this matter. In *Tallmadge*, the defendant had been convicted in California state court for illegal possession of a machine gun, a crime punishable by a term of imprisonment exceeding one year. 829 F.2d at 768. Because of his good conduct while on probation, the state court reduced his offense to a misdemeanor. The defendant then purchased firearms from a federal firearms licensee. The licensee advised the defendant that "there was no problem owning a gun because the felony conviction had been reduced to a misdemeanor." *Id.* at 770. This representation was erroneous. The defendant was convicted in federal court of possession of firearms after having previously been convicted of a crime punishable by a term of imprisonment exceeding one year in violation of 18 U.S.C. § 922(h)(1).

We reversed the defendant's conviction in *Tallmadge* based on the affirmative defense of entrapment by estoppel. We held that "the United States Government has made licensed firearms dealers federal agents in connection with the gathering and dispensing of information on the purchase of firearms." *Id.* at 774. We held in *Tallmadge* that because the federal firearm licensee had affirmatively, but erroneously, represented to the defendant that he was eligible to purchase firearms, the defendant "ha[d] the right to rely on the representations of a licensed firearms dealer, who has been made aware of all the relevant historical facts." *Id.*

In this matter, Mr. Batterjee relied on the representations of a federal firearms licensee in purchasing the pistol and ammunition. The outdated version of Form 4473 presented to Mr. Batterjee by the federal firearms licensee did not provide him with notice that a non-immigrant lawfully in the United States on a work visa could not possess or receive a firearm. As discussed above, the only question pertaining to immigration status on the Form 4473 filled out by Mr. Batterjee states: "Are you an alien illegally in the United States?" Mr. Batterjee was an alien lawfully in the United States when he received the pistol and ammunition.

Mr. Batterjee testified that the information he received at Shooting Star "assured [him] that [he was] legally purchasing and possessing a firearm." When asked if he would have ceased pursuing the purchase of the pistol had Shooting Star informed him he was not qualified to possess a firearm, Mr. Batterjee responded, "Yes I would have." His testimony was uncontradicted.

Shooting Star was a federal firearms licensee, responsible for ensuring that only qualified individuals obtained firearms from it. Form 4473 was an official document prepared by the ATF. Therefore, it was reasonable for Mr. Batterjee to rely on the information provided by the licensee and Form 4473.

The Government contends that Mr. Batterjee has not demonstrated that he was affirmatively misled by a federal firearms licensee. The Government argues that the text of Form 4473 did not affirmatively inform Mr. Batterjee that a legal alien on a non-immigrant visa could purchase a firearm. It asserts that the instant case is controlled by *Brebner*, in which we rejected an entrapment by estoppel defense. The Government's reliance on *Brebner* is misplaced. The appellant in *Brebner* asserted that he was entitled to the defense

of entrapment by estoppel because a federal firearms licensee failed to explain the legal requirements for purchasing firearms. 951 F.2d at 1023–24. We affirmed the conviction in *Brebner* because the defendant "failed to show the type of affirmative misleading on the part of these [gun] dealers that is required to justify an entrapment by estoppel defense." *Id.* at 1026; *see also Ramirez–Valencia*, 202 F.3d at 1109 (stating that a defendant must show that an official "affirmatively misrepresent[ed]" the applicable legal constraints).

The Government asserts that Form 4473 did not affirmatively inform Mr. Batterjee that a legal alien on a non-immigrant visa could purchase a firearm. While it is true that Form 4473 did not expressly state that an alien legally in the country on a non-immigrant visa could purchase a firearm, the only immigration-related basis for not being eligible to possess a firearm Form 4473 set forth was illegal presence in the United States. Moreover, unlike the circumstances in *Brebner*, Mr. Rozakis and Mr. Burt affirmatively represented to Mr. Batterjee that he would be eligible to purchase the pistol if he produced a government-issued photo identification and proof of residency in Arizona for at least ninety days.

The Government also maintains that Mr. Rozakis and Mr. Burt were not aware of all of the relevant historical facts because Mr. Batterjee did not inform them that he was legally present in the country under a non-immigrant visa. It is undisputed, however, that none of the parties involved in the transaction were aware that the 1998 amendment to § 922(g)(5) barred an alien present in the United States on a non-immigrant visa from possessing a firearm or ammunition. The record shows that each of them believed that Mr. Batterjee could possess a firearm and ammu-nition because he was an alien lawfully in the United States.

The Government further asserts that entrapment by estoppel does not apply here because the evidence showed that Mr. Batterjee was predisposed to violate § 922(g)(5) because he had previously possessed other firearms and practiced target shooting. In advancing this argument, the Government misapprehends the distinction between the defense of entrapment and the defense of entrapment by estoppel. The defense of entrapment turns on the subjective intent of the defendant: "It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." *United States v. Russell*, 411 U.S. 423, 436, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). In contrast, "entrapment by estoppel rests on a due process theory which focuses on the conduct of the government officials rather than on a defendant's state of mind." *Brebner*, 951 F.2d at 1025. While one of the elements of an entrapment claim is "the absence of predisposition on the part of the defendant," *United States v. Davis*, 36 F.3d 1424, 1430 (9th Cir.1994), a defendant's predisposition to commit an offense is not at issue in an entrapment by estoppel defense. *Brebner*, 951 F.2d at 1025; *see also United States v. Thompson*, 25 F.3d 1558, 1561 n. 2 (11th Cir.1994) ("Entrapment by estoppel is an affirmative defense which, unlike the defense of entrapment, focuses on the actions of government officials and not on the defendant's predisposition."); *United States v. Smith*, 940 F.2d 710, 714 (1st Cir.1991) ("[E]ntrapment by estoppel rests upon principles of fairness, not defendant's mental state."). Entrapment by estoppel "can be raised as a defense to offenses that do not require proof of specific intent." *Brebner*, 951 F.2d at 1025. Accordingly, whether Mr.

Batterjee was predisposed to violate § 922 is immaterial to his entrapment by estoppel defense.

Finally, the Government argues that even if Mr. Batterjee's entrapment by estoppel defense is valid regarding his conviction for possession of a firearm, it does not apply to his conviction for possession of ammunition. This contention has no merit. Mr. Batterjee bought the ammunition from the same federal firearms licensee who advised him that he could possess a pistol because he was an alien lawfully present in the United States.

We are persuaded that the district court erred in rejecting Mr. Batterjee's credible entrapment by estoppel defense.[7]

**REVERSED.**

---

**7.** Because we reverse Mr. Batterjee's conviction, we do not address his second assignment or error regarding the district court's denial of his motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.