**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

RANDOLPH BENJAMIN RODMAN,
*Defendant-Appellant*.

No. 13-10337

D.C. No.
2:10-cr-01047-ROS-2

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

IDAN C. GREENBERG,
*Defendant-Appellant*.

No. 13-10351

D.C. No.
2:10-cr-01047-ROS-6

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, Senior District Judge, Presiding

Argued and Submitted
October 9, 2014—Phoenix, Arizona

Filed January 9, 2015

Before: J. Clifford Wallace, Barry G. Silverman,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction for conspiracy to defraud an agency of the United States, in violation of 18 U.S.C. § 371, in a case in which Randolph Rodman and his co-defendants were charged with conspiracy to transfer machine guns unlawfully by making false entries on forms submitted to the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

The panel held that regulating the registration and transfer of firearms using government forms is a lawful function of the government, and that to be guilty of a conspiracy to defraud the government in the context of this case, it is sufficient that Rodman and his co-conspirators agreed to submit, and did submit, machine gun registration and transfer forms with false information to the ATF, thereby impairing and obstructing the ATF's lawful government function of regulating the transfer of firearms.

The panel held that the district court did not err in declining to give a jury instruction for entrapment by estoppel based on Rodman's claim that George Clark, a federal firearms licensee, told Rodman that the manner in which Clark manufactured and transferred machine guns was legal. The panel held that Clark was not acting as an authorized government official for purposes of the entrapment-by-estoppel defense in this context in which Rodman is himself a federal firearms licensee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel rejected Rodman's argument that he was entitled to a jury instruction explaining the buyer-seller affirmative defense, as such an instruction would have been inapposite to the charged conspiracy to submit fraudulent forms to the ATF.

The panel addressed other claims raised by Rodman and his co-defendant Idan Greenberg in memorandum dispositions filed contemporaneously with the opinion.

---

**COUNSEL**

David T. Hardy (argued), Tucson, Arizona, for Defendant-Appellant Randolph Rodman.

Steven Robert Shanin (argued), Chicago, Illinois, for Defendant-Appellant Idan Greenberg.

Dominic Lanza (argued), Assistant United States Attorney, and Mark Kokonavich, Deputy Appellate Chief, United States Attorney's Office, Phoenix, Arizona, for Plaintiff-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

Defendant-Appellant Randolph Rodman challenges his conviction for conspiracy to defraud the government. Rodman contends that insufficient evidence existed to convict him, and that the district court erred in failing to give jury instructions for entrapment by estoppel, and instructions concerning a buyer-seller relationship between George Clark and Rodman.

We hold that regulating the registration and transfer of firearms is a lawful function of the government. We also conclude that the district court did not err in declining to give the requested jury instructions because the lack of an authorized government official precludes entrapment by estoppel, and there was sufficient evidence of a conspiracy to obstruct a lawful function of the government to eliminate the possibility of a simple buyer-seller transaction.

All other claims raised by Rodman and his co-defendant, Idan Greenberg, are addressed in two memorandum dispositions filed concurrently with this opinion. We affirm Rodman's conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

Rodman and five other defendants were indicted for conspiracy to defraud an agency of the United States, in violation of 18 U.S.C. § 371. Specifically, the defendants were charged with conspiracy to transfer machine guns unlawfully by making false entries on forms submitted to the Bureau of Alcohol, Tobacco, Firearms, and Explosives

(ATF). The National Firearms Act (NFA) provides that it is unlawful for a private citizen to transfer or possess an unregistered machine gun. 26 U.S.C. §§ 5812, 5822. Machine guns must be registered with the National Firearms Registration and Transfer Record, which is maintained by the National Firearms Act Branch (NFA Branch) of the ATF. In order to transfer a machine gun between federal firearms licensees, an ATF Form 3, signed under penalty of perjury, must be completed and filed with the ATF. In order to transfer a machine gun to a member of the general public, an ATF Form 4, signed under penalty of perjury, must be completed and filed with the ATF. Among other data, these forms require a description of the firearm being transferred, including the serial number, the type of firearm, the caliber, the model, the length of the barrel, and the overall length of the firearm.

Private citizens, whether federal firearms licensees or members of the general public, who are not acting under the authority of the United States or a state, may transfer or possess only machine guns that were registered on or before May 16, 1986. 18 U.S.C. §§ 922(o)(2)(A)–(B). In this opinion, we refer to machine guns registered on or before May 16, 1986 as "pre-ban machine guns," and to machine guns registered after May 16, 1986 as "post-ban machine guns."

In order to circumvent the restrictions described, Rodman, along with his codefendants Idan Greenberg, George Clark, Hal Goldstein, James Arnberger, and Lorren Kalish, all of whom were federal firearms licensees, entered into a conspiracy to build, possess, and sell post-ban machine guns that used serial numbers cut from pre-ban machine guns. Clark, who was also licensed to manufacture firearms, would

cut the serial number from an inexpensive registered pre-ban machine gun, and discard the remaining parts of the gun. Clark would then use new parts, often supplied by his codefendants, to construct a new machine gun, and would weld the serial number of the pre-ban machine gun onto the new, post-ban machine gun. The defendants would then sell the new, post-ban machine guns as pre-ban machine guns, in some cases for a significant profit, without telling the buyers of those guns the method by which the machine guns had been made, or that the machine guns offered to the buyers were actually post-ban machine guns.

The defendants registered and transferred these "new" machine guns amongst themselves and others by filling out either a Form 3 or a Form 4 using the serial number, manufacturer, and model of the pre-ban machine guns. These transfer forms were fraudulent. The forms listed the model and manufacture of the pre-ban machine gun even though the machine gun actually sold was a new gun, a different model than the pre-ban gun, and had been manufactured by Clark. Additionally, the forms did not mention that the serial number on the gun being sold had been cut from a pre-ban machine gun and affixed onto the new post-ban machine gun. The ATF approved these transfers because none of the defendants disclosed that they were selling post-ban machine guns using pre-ban machine gun information, and the ATF relied on the false representations made in the transfer forms.

Consistent with the conspiracy, Rodman purchased Clark's machine guns manufactured post-ban but affixed with pre-ban serial numbers. Rodman knew the method by which Clark manufactured the machine guns, but claimed during trial that Clark told him this method was lawful. Clark filed transfer papers with the ATF to transfer 13 machine guns to

Rodman between 2000 and 2008. These new machine guns were transferred to Rodman using the serial number and other information, such as the model name and manufacturer, from the pre-ban machine guns. Rodman sold and filed transfer papers with the ATF for seven of the Clark-made machine guns, again using pre-ban information to sell and transfer post-ban guns.

Rodman moved for acquittal, and to dismiss the charge for conspiracy to defraud the government under 18 U.S.C. § 371. The district court denied both motions. Rodman also unsuccessfully requested a jury instruction for entrapment by estoppel based on Clark's alleged statements that his method of manufacturing machine guns was lawful, and a jury instruction regarding a buyer-seller relationship between Rodman and Clark.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review *de novo* Rodman's motion for acquittal of the conspiracy charge, and Rodman's motion to dismiss the charge for conspiracy. *United States v. Neill*, 166 F.3d 943, 947 (9th Cir. 1999); *United States v. Yoshida*, 303 F.3d 1145, 1149 (9th Cir. 2002). We also review *de novo* a district court's decision declining to issue a requested jury instruction. *See United States v. Ibarra-Pino*, 657 F.3d 1000, 1003 (9th Cir. 2011).

**DISCUSSION**

## I.  Conspiracy to Defraud

The federal conspiracy statute, 18 U.S.C. § 371, makes it a crime:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy . . . .

The phrase "to defraud . . . in any manner or for any purpose" covers "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." *Tanner v. United States*, 483 U.S. 107, 128 (1987) (internal quotation marks omitted).

We have construed the language in 18 U.S.C. § 371 to include "obstructing the operation of any government agency by any 'deceit, craft or trickery, or at least by means that are dishonest.'" *United States v. Caldwell*, 989 F.2d 1056, 1058 (9th Cir. 1993) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)). We have also clarified that a conspiracy need not deprive the government of property, involve any detrimental reliance by the government, or involve independently illegal goals or means. *Id.* at 1058–59. Instead, the elements of a conspiracy under 18 U.S.C. § 371 are "(1) [defendant] entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." *Id.* at 1059.

Using these elements, we have held that 18 U.S.C. § 371 "applies to conspiracies to impede, impair, obstruct, or defeat the lawful function of the Department of Treasury in the collection of income taxes" by filing fraudulent income tax returns. *United States v. Little*, 753 F.2d 1420, 1443 (9th Cir. 1984) (citing *United States v. Turkish*, 623 F.2d 769, 771 (2d Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981)). Additionally, in *United States v. Lorenzo*, we affirmed a conviction for conspiracy under 18 U.S.C. § 371 when defendants filed fraudulent IRS 1099-MISC forms requesting tax refunds from the IRS. 995 F.2d 1448, 1451–52 (9th Cir. 1993). Thus, the submission of fraudulent forms to a governmental agency by two or more persons when those fraudulent forms impede that agency's lawful functions constitutes a conspiracy under 18 U.S.C. § 371.

There is ample evidence here that Rodman impeded the lawful government functions of the ATF and the NFA Branch by submitting fraudulent forms. The NFA gives the ATF the authority to regulate the transfer and making of firearms. 26 U.S.C. §§ 5812, 5822. These statutes provide that a "firearm shall not be transferred unless . . . the transferor of the firearm has filed with the Secretary a written application . . . for the transfer and registration of the firearm to the transferee on the application form prescribed by the Secretary" and "the firearm is identified in the application form in such manner as the Secretary may by regulations prescribe." 26 U.S.C. § 5812(a). They also provide that "[n]o person shall make a firearm unless he has . . . filed with the Secretary a written application . . . to make and register the firearm on the form prescribed by the Secretary" and "identified the firearm to be made in the application form in such manner as the Secretary may by regulations prescribe." 26 U.S.C. § 5822. Under both statutes, the maker and

transferor are required to obtain the approval of the Secretary before making or transferring the firearm. *Id.* §§ 5812(a), 5822. Just as we did in the context of filing IRS forms, we conclude that regulating the registration and transfer of firearms using government forms is a lawful function of the government. The ATF approves or denies transfers based on the information alleged in the forms. If the information provided to the ATF is inaccurate or fraudulent, the ATF is unable to approve transfers correctly pursuant to the NFA. Therefore, to be guilty of a conspiracy to defraud the government in the context of this case, it is sufficient that Rodman and his co-conspirators agreed to submit, and did submit, machine gun registration and transfer forms with false information to the ATF, thereby impairing and obstructing the ATF's lawful government function of regulating the transfer of firearms.

We also observe that because Rodman's actions constitute a conspiracy to impair the functioning of the ATF, it was not necessary that there be evidence of any other form of injury to the ATF in order for Rodman to be found guilty of a conspiracy under 18 U.S.C. § 371. *See Tanner*, 483 U.S. at 128.

## II. Entrapment by Estoppel

"The entrapment by estoppel defense applies when [(1)] an authorized government official tells the defendant that certain conduct is legal and [(2)] the defendant believes the official." *United States v. Brebner*, 951 F.2d 1017, 1024 (9th Cir. 1991). Rodman argues that the district court erred when it refused to give an entrapment by estoppel instruction based on his claim that Clark, a federal firearms licensee, told

Rodman that the manner in which Clark manufactured and then transferred machine guns was legal.

We have held that a licensed firearms dealer is an authorized government official "in connection with the gathering and dispensing of information" on whether a given customer, usually one with a criminal history, can legally purchase a firearm. *United States v. Tallmadge*, 829 F.2d 767, 774 (9th Cir. 1987). *See also, e.g.*, *United States v. Batterjee*, 361 F.3d 1210, 1217–19 (9th Cir. 2004). However, the circumstances of the present case are quite different than the circumstances in *Tallmadge* and *Batterjee*. Rodman is not some customer off the street inquiring about whether he can legally purchase a firearm. Rodman is himself a federal firearms licensee. Therefore, Clark's status as a federal firearms licensee puts Clark in no better position than Rodman to know whether Clark's methods of manufacturing and transferring the machine guns were legal. Moreover, in determining that federal firearms licensees should be deemed authorized government officials, the court in *Tallmadge* relied on the fact that the relevant form placed an affirmative duty on the seller of the firearms to determine the lawfulness of the transaction, to be familiar with the relevant law, and to inform the buyer of any restrictions imposed by Congress on the purchase of firearms. *See* 829 F.2d at 774. Rodman has failed to show that Congress has placed similar duties on a federal firearms licensee when he sells a firearm to another federal firearms licensee. Accordingly, we decline to extend the holdings of *Tallmadge* and *Batterjee* to apply when the firearm transaction is made between two federal firearms licensees. Therefore, the district court did not err by failing to give the requested entrapment by estoppel instruction as Clark was not acting as an authorized government official in this context.

## III.     Buyer-Seller Relationship

Finally, Rodman argues that he was entitled to a jury instruction explaining the buyer-seller defense to conspiracy. The buyer-seller jury instruction is an affirmative defense available in cases charging conspiracy to distribute a controlled substance. In such cases, the buyer-seller defense requires that the government show "'an agreement to commit a crime other than the crime that consists of the sale itself.'" *United States v. Lennick*, 18 F.3d 814, 819 (9th Cir. 1994) (quoting *United States v. Lechuga*, 994 F.2d 346, 347 (7th Cir. 1993)). This is necessary because "otherwise, every narcotics sale would constitute a conspiracy." *Id.* In such cases, the buyer-seller defense is used to distinguish between a conviction for the sale of narcotics, and a conviction for a conspiracy to distribute narcotics; it requires the government to establish that the seller not only sold narcotics to the buyer, but "that the buyer and seller in a narcotics transaction had an agreement to further distribute the narcotics in question." *United States v. Mincoff*, 574 F.3d 1186, 1193–94 (9th Cir. 2009).

Rodman argues is that he is not guilty of conspiracy because he merely had a buyer-seller relationship with Clark, and thus was not part of a conspiracy to defraud the government. This argument is untenable. The elements of conspiracy to defraud the government under 18 U.S.C. § 371, the crime of which Rodman was convicted, are "(1) [defendant] entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy." *Caldwell*, 989 F.2d at 1059. In asserting his alleged right to raise the buyer-seller defense, Rodman refers to sales of post-ban machine guns to which Clark

had affixed the serial numbers of pre-ban machine guns. These sales were made in violation of 18 U.S.C. §§ 922(o)(2)(A)–(B). However, Rodman was not convicted of conspiracy to distribute these post-ban machine guns. Instead, he was convicted of conspiracy to submit fraudulent transfer forms to the ATF. Even if Rodman could prove that the government was unable to establish that Clark and Rodman had an agreement to further distribute the machine guns beyond the initial sale, Rodman would still have been found guilty of a conspiracy to defraud the government by obstructing one of its lawful functions.

A buyer-seller jury instruction would have been inapposite to the conspiracy of which Rodman was charged, and the district court did not err in declining to give a buyer-seller jury instruction.

## IV.    Conclusion

Rodman was properly convicted of conspiracy to defraud the government in violation of 18 U.S.C. § 371, and the district court did not err when it declined to give jury instructions for entrapment by estoppel and the buyer-seller rule. We therefore affirm Rodman's conviction.

**AFFIRMED.**